UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANTHONY STEIER, PLAINTIFF

v. CIVIL ACTION NO. 3:09-CV-846-S

MOTORISTS MUTUAL INSURANCE CO., et al., DEFENDANTS

**MEMORANDUM OPINION**

In 2006, Service Drywall Company ("Service") sued Anthony Steier, Clay Locke and Commonwealth Walls, Inc. ("Commonwealth"), on the basis that Locke (while an employee of Service) had surreptitiously and with Steier's help set up Commonwealth to compete with his own employer in the Louisville market. On September 8, 2009, after three years of litigation, a jury of this court returned a verdict holding (*inter alia*) Steier liable for aiding and abetting Locke's breach of his fiduciary duty as an employee of Service, and for interfering with Service's contracts and prospective business relations. The jury found that Steier was 40% liable for Locke's breach of fiduciary duty and for the $400,000 in damages it assessed therefor, exposing him to liability in the amount of $160,000. The jury also found him 30% liable for the $200,000 in damages attributable to interference with Service's contracts and prospective business, making him responsible for another $60,000. So pursuant to the court's judgment, which the defendants have appealed, Steier owes Service $220,000.[1] Steier then filed this action (in state court) for a declaratory judgment against Motorists Mutual Insurance Company ("Motorists"), demanding that the court acknowledge his right to indemnity under Commonwealth's umbrella insurance contract. Motorists removed the

---

[1] The jury also assessed $60,000 in punitive damages against Steier, but that sum is not at issue in this lawsuit.

case to this court, asserting diversity of citizenship.[2] Steier then moved for judgment on the pleadings. Motorists moved to strike and for an extension of time, but it subsequently found time to file a reply. Thus its motions will be denied as moot and the court will proceed to consider whether to grant Steier judgment on the pleadings.

In deciding a Rule 12(c) motion for judgment on the pleadings, a district court "must take all the 'well-pleaded material allegations of the pleadings of the opposing party' as true," *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC*, 594 F.3d 441, 444 (6th Cir. 2010) (*quoting Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006)), and may also take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the [pleadings]." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (*quoting Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Of course, the court "need not accept the [non-moving party's] legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). The motion should be granted only "where the moving party 'is entitled to judgment as a matter of law.'" *Beazer Homes*, 594 F.3d at 444 (*quoting Rawe*, 462 F.3d at 526).

---

[2] Steier is a Kentucky citizen, Motorists is an Ohio citizen, and more than the jurisdictional minimum is in controversy. Also joined as defendants are Service and Commonwealth, and the latter's Kentucky citizenship destroys complete diversity on the complaint's face. To avoid this problem, Motorists argues that the drywall companies are improperly joined and should be ignored. Steier has not disputed this assertion, with which we agree. The relevant consideration is whether the plaintiff has stated a valid cause of action against the allegedly improperly-joined party. *See Saltire Industrial, Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 530 (6th Cir. 2007); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). There are no disputed questions here, as the only purpose of the state-court pleading (styled a "Petition for Declaratory Judgment") is for a declaration of Steier's contractual rights vis-à-vis Motorists. If Service and Commonwealth are proper parties at all, it is for purely formal reasons that have nothing to do with the merits of the case. They are properly ignored for purposes of jurisdiction, which we therefore retain pursuant to 28 U.S.C. §§ 1332 and 1441.

Because this is a diversity case, Kentucky substantive law will apply. *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 573 (6th Cir. 2008) (*citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

The request for declaratory judgment (which 28 U.S.C. § 2201 authorizes the court to enter) is premised on the parties' insurance contract, so we begin there. Commonwealth's insurance agreement, under which Steier claims coverage, consists of a general liability policy and an "umbrella" policy covering events excluded from the general policy. The latter is relevant here, as Steier concedes his claim falls outside the general policy.[3] The umbrella policy provides coverage (*inter alia*) "[f]or an 'occurrence' covered by this policy which is either excluded or not covered by the 'underlying insurance[]' because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this [policy] applies." (Def.'s Ex. 5, Ins. Policy, at 26 (paragraph break removed).) Steier's claim is obviously unrelated to any injury to person or property, so it is covered only if it arose out of an "occurrence" that counts as an "advertising injury," as defined in the umbrella policy. "Occurrence," in turn, means one of four things:

1. An accident, or a happening or event . . . which results in "bodily injury" or "property damage" . . . ;
2. Any intentional act by or at the direction of the insured which results in "bodily injury" . . . ;
3. An offense within the definition of "personal injury;"
4. An offense within the definition of "advertising injury."

(*Id.* at 33.) Because, again, there is no personal injury or property damage here, the only question is whether Steier's claim stems from an "advertising injury." That term is given a three-part definition:

1. The publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right or privacy;
2. Infringement of copyright, title or slogan; or

---

[3] Strictly speaking, Steier was not a party to the contract, but Motorists evidently concedes that he is nonetheless an insured: it raises no argument to the contrary in its response brief, and appears to acknowledge that Steier was an officer, director, and/or stockholder covered by Section III of the umbrella policy. (*See* Resp. 2 ("[Locke] and Steier formed a second drywall company . . . ."); Def.'s Ex. 5, Ins. Policy, at 29.)

3. Piracy or unfair competition or idea misappropriation.

(*Id.* at 33.) The parties rightly agree that neither definition (1) nor definition (2) is pertinent here, and focus instead on whether the judgment against Steier arose out of the commission of "piracy" or "unfair competition."

As background to the determination of that question, we set out some principles of the interpretation of insurance contracts in Kentucky. The state Supreme Court has articulated "two cardinal principles" of this endeavor: "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and, (2) exceptions and exclusions should be strictly construed to make insurance effective." *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992) (citations omitted). From these principles follows the doctrine of reasonable expectations, which dictates that ambiguous language is construed to provide the insured all the coverage he could reasonably expect to obtain. *Simon v. Continental Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986). The question before the court is thus whether it was reasonable for Steier to expect that the umbrella policy would cover a judgment arising out of his conduct in joining with Locke to create Commonwealth to compete with Service: could he reasonably have thought his actions amounted to "unfair competition" or "piracy" per the terms of the contract?

Kentucky defines the unfair competition tort thus: "either (1) injuring the plaintiff by taking his business or impairing his good will, or (2) unfairly profiting by the use of the plaintiff's name, or a similar one, in exploiting his good will. Underlying the whole theory is the matter of actual or intended deception of the public for business reasons." *Covington Inn Corp. v. White Horse Tavern, Inc.*, 445 S.W.2d 135, 139 (Ky. 1969). Surveying prior cases to reach this conclusion, the court emphasized that "the intent to deceive is the gravamen of the offense in all cases of this character,"

and that therefore the court's attention should focus on "the intent with which the name is used, the manner in which it is used, and whether the public is deceived or confused by the use of the name to the detriment of the business offended." *Id.* (*quoting Kay Jewelry Company v. Gay's Jewelry*, 277 S.W.2d 30, 33, 34 (Ky. 1955)). More recently, the Kentucky Court of Appeals has observed that, "[o]riginally, unfair competition 'dealt generally with the palming off of one's goods as those of a rival trader. Thus, the essence of common-law unfair competition is the bad-faith misappropriation of the labors and expenditures of another likely to cause confusion or to deceive purchasers as to the source or the origin of goods.'" *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 871 (Ky. Ct. App. 2007) (*quoting* 54A Am. Jur. 2d, *Monopolies, Restraints of Trade, and Unfair Trade Practices* § 1107 (1996)). The tort has more recently been "extended to outlawing 'parasitism' under the principle that one may not appropriate a competitor's skill, expenditures, and labor." *Id.* (*quoting* 54A Am. Jur. 2d, *supra*, at § 1107).

Of course, the meaning of terms in a contract may not precisely parallel legal usage—though they will typically be close cousins. Reading the terms in question here in the context of their surroundings gives some focus to the rambling common-law definition just discussed. First, "unfair competition" falls under the heading "advertising injury." This tends to reaffirm the view that deception of purchasers is a necessary component of the sort of injury covered by the contract. The specific terms with which "unfair competition" is associated—"piracy" and "idea misappropriation"—back up this interpretation. As relevant here (the insurance contract plainly cannot mean to include robbery on the high seas or the hijacking of an airplane), piracy is "[t]he unauthorized and illegal reproduction or distribution of materials protected by copyright, patent, or trademark law." Black's Law Dictionary (8th Ed. 2004). The idea is limited to various intellectual-property-related

offenses: using another's mark to sell one's own products, illegally obtaining and distributing copyrighted material, and so on. The gravamen is wresting control of some form of protected material from its true owner, such that the owner loses the ability to advertise or use its property as it sees fit. It thus fits the broad notion of "advertising injury." Idea misappropriation is similarly related to misuse of intellectual property for the deception of the public as to the true owner or developer of an idea.

With this context in mind we think it correct to focus on the element of deception of the public as the crucial aspect of the "unfair competition" and "piracy" covered by the umbrella policy. While it is true that the *Covington Inn* court named "injuring the plaintiff by taking his business" as one form of unfair competition, it made equally clear that actual or intended deception of the public is an "essential element" of the tort. The disjunctive first sentence of the court's definition simply cannot be read in isolation from what immediately follows. It is not a "hypertechnical construction" of Kentucky law (Reply 1) to read the entire definition of a tort in context to ascertain its true nature. And indeed, this court already focused on that second sentence as providing a crucial element in the suit underlying this case: citing *Covington Inn*, the court refused to allow a late-filed (*after* summary judgment motions had been addressed) amendment to the complaint adding an unfair competition claim because no evidence had been developed to support deception of the public, and it was too late to force the defense to develop whole new theories of the case in order respond to the new charge. *Serv. Drywall Co. v. Commonwealth Walls, Inc.*, No. 3:06-CV-372-S, slip op. at 3-4 (W.D. Ky. Apr. 15, 2009). Thus no evidence of deception of the public was ever actually uncovered in the underlying case, although the court did not foreclose its possible existence. *See id.* at 4. The only deception actually adjudicated on the merits was of Service, not the public:

the theory of the case put forth in the complaint and at trial was that Locke and Steier created a separate entity in Louisville that steered (plaintiffs in that case would probably say "stole") business away from Service and towards Commonwealth, not that Commonwealth passed its drywall services off as having been rendered by Service (or that it passed Service's labor or expertise off as its own). While the court agrees in principle with the various authorities cited in the plaintiff's briefing to the effect that it is the substance of the allegations and evidence rather than the labels applied to them that matter for purposes of determining coverage, that rule does not change the outcome of a case where the very "essence" or "gravamen" of the covered tort is absent. We therefore conclude that the conduct alleged and proved (to the jury's satisfaction) did not constitute an "advertising injury" within the meaning of the insurance contract, and that Steier cannot reasonably have thought that it did.

The cases cited by the plaintiffs in rebuttal are unavailing. A number of them deal with the duty to defend, which is far broader than the duty to indemnify. *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279-280 (Ky. 1991) ("The duty to defend is separate and distinct from the obligation to pay any claim. . . . The duty to defend is broader than the duty to indemnify."). The duty to defend takes hold "if there is any allegation in the complaint which potentially, possibly or might come within the coverages of the policy," *O'Bannon v. Aetna Casualty & Surety Co.*, 678 S.W.2d 390, 392 (Ky. 1984), whereas the insurer owes indemnity only where the insured could reasonably expect that his damages would be covered. Applying the looser duty-to-defend method of interpretation to a claim for indemnity would provide an insured with far more coverage than he actually purchased.

Other cases cited in support of the motion simply do not change our thinking. For instance, *United States Fire Ins. Co. v. Green Bay Packaging, Inc.*, 66 F. Supp. 2d 987 (E.D. Wis. 1999) (applying Wisconsin law) states that "[a] duty to indemnify exists if acts occur that are insured against." *Id.* at 999 (citations omitted). As explained above, the plaintiffs were not insured against the acts that occurred, because they did not deceive the general public. The *Green Bay Packaging* court went on to quote *Benke v. Mukwonago-Vernon Mut. Ins. Co.*, 329 N.W.2d 243 (Wis. Ct. App. 1982) for the proposition that "if there is any evidence that any included peril is a cause of damage, then, it is assumed that the insured paid to be protected from that loss, and it would be unfair to the insured to deny the benefits as paid for." But the jury in the underlying case here was not asked whether deception of the public, the gravamen of the "included peril," ever occurred; no evidence to that effect was presented.

Finally, plaintiff places great weight on *New Hampshire Ins. Co. v. Foxfire, Inc.*, 820 F. Supp. 489 (N.D. Cal. 1993). While that case involved a claim for interference with economic relationships that the court ultimately treated as falling within the meaning of "unfair competition" in an insurance contract, it is quite obviously factually distinct. The complaint alleged that "[Foxfire] further interfered with Plaintiff's economic relationship with its clients by representing to said clients that it was continuing to act on behalf of Toyon and/or was assigned the accounts of Toyon's clients by Toyon." *Id.* at 495. Thus the court found "that the facts alleged by Toyon—specifically that Foxfire misrepresented to clients that it was acting on behalf of Toyon—give rise to a potential of liability for common law unfair competition. In its complaint, Toyon contends that, but for this misrepresentation, its economic relationships would not have been interfered with." *Id.* Plainly deception of the public (i.e. the insured's clients) was in fact present, and the court therefore firmly

disagrees with Steier's characterization that *Foxfire* is "squarely on point with the instant case." (Reply 5.) Absent this crucial element, Steier's actions cannot reasonably be characterized as "unfair competition" or "piracy" within the meaning of the contract, and he is without coverage. His motion will therefore be denied.

Having resolved the principal issue presented in this case, we circle back to one we skipped over. Plaintiff's counsel was very careful not to quote the second sentence of the *Covington Inn* definition of unfair competition (the one demanding "actual or intended deception of the public") in his briefing. (Pl.'s Br. 8. *See also* Reply 3.) Declining to quote a damaging passage might be a reasonable strategy in some circumstances (though it would seem to evince a lack of candor as well as serious doubts about the merits of one's position), but counsel's misrepresentation here in fact goes farther than that. The block quotation on page 8 of the plaintiff's opening brief reads (in full) as follows:

> [U]nfair competition consists of either (1) injuring the plaintiff by taking his business or impairing his good will, or (2) unfairly profiting by the use of the plaintiff's name, or a similar one, in exploiting his good will. . . . [The doctrine of unfair competition] has been held to apply to misappropriation as well as misrepresentation, to the selling of another's goods as one's own—to misappropriation of what equitably belongs to a competitor. Also, the doctrine has been extended in many cases, especially the more recent, so as to afford protection and relief against the unjust appropriation of, or injury to, the good will or business reputation of another, even though he is not a competitor.

The second part of this "quotation" (following the ellipsis) is pulled from several paragraphs *above* the first, and is itself a quotation (unattributed in the brief) from 52 Am. Jur., *Trade-marks, Trade-names, Etc.*, § 86, at 564. While the lack of attribution might be excused as a mere failure of cite-checking, the decision to reorder the court's opinion—while erasing a crucial sentence—in order to misstate its ruling is not so easily brushed aside. Counsel has taken a bit of background material

- 9 -

quoted by the court and appended it to the holding, nine paragraphs down the opinion. It is rather difficult to see how this sleight-of-word-processor could have been unintentional. This is not quite a "false statement of . . . law," Ky. S. Ct. R. 3.130(3.3)(a)(1), but it comes close. Counsel is reminded of his duty of candor, and of the court's authority under LR 83.3(c).

     A separate order will issue, consistent with this opinion.